UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS JACKSON,

    *Plaintiff*,

v.

CASE NO. 13-CV-10827

DISTRICT JUDGE BERNARD FRIEDMAN
MAGISTRATE JUDGE CHARLES BINDER

MARRIOT, *Correctional Officer*;
B. FOREMAN, *Inspector*;
B. EVERS, *Residential Unit Manager*;
MESSER, *Sergeant*; and
CHRISTOPHER DAVIS,
*Social Worker*;

    *Defendants*.
                            /

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR AN ORDER TO COMPEL DISCOVERY**
(Doc. 41)
**PLAINTIFF'S MOTION TO APPOINT COUNSEL**
(Doc. 44)
**PLAINTIFF'S MOTIONS FOR CONTEMPT PROCEEDINGS**
(Doc. 48, 52)
**AND FACT FINDING PURSUANT TO THE ORDER OF REFERENCE**
(Doc. 42)

I.  **RECOMMENDATIONS**

For the reasons set forth below, **IT IS RECOMMENDED** that:

1)  Plaintiff's motions (Docs. 41, 44, 48, 52) be **DENIED** and

2)  pursuant to the findings of fact set forth below, Defendant's motion for summary judgment be **GRANTED** as recommended in the earlier Report and Recommendation (Doc. 38), as I find that Plaintiff failed to properly exhaust administrative remedies.

II. **REPORT**

### A. Introduction

Plaintiff Curtis Jackson, a state prisoner, originally filed this *pro se* federal civil rights action in the United States District Court for the Western District of Michigan. The case was transferred to this Court on February 28, 2013. (Docs. 1, 2.) Plaintiff alleges that his civil rights were violated because the defendants "have been preventing plaintiff from sending out letters that complain[] about prison conditions at the facility, and preventing plaintiff from sending letters of a sexual nature to his female friends, which violates plaintiff['s] right to freedom of speech and expression." (Doc. 1 at 3.) The events giving rise to the complaint occurred while Plaintiff was incarcerated at the Michigan Department of Correction's ("MDOC") Gus Harrison Correctional Facility in Adrian, Michigan.

Plaintiff's motion to proceed without prepayment of fees and costs was granted by the District Court for the Western District of Michigan. On April 2, 2013, U.S. District Judge Bernard Friedman entered an order referring all pretrial matters to the undersigned magistrate judge. (Doc. 9.) On July 22, 2013, several defendants filed a motion for summary judgment. (Doc. 30.) A Report and Recommendation was filed on October 17, 2013, recommending that defendants' motion for summary judgment be granted based on Plaintiff's failure to exhaust administrative remedies. (Doc. 58.) Defendants presented evidence that Plaintiff failed to properly exhaust remedies because he did not file a Step III grievance. (Doc. 30.) Plaintiff conceded that he did not file a Step III grievance but argued that "the prison's grievance process was not available to plaintiff because of his Modified Access (grievance restriction)." (Doc. 32 at 1, 4-6.)

On November 15, 2013, Judge Friedman referred the case to the undersigned magistrate judge "for a determination regarding whether plaintiff actually requested a grievance form from the prison's Step I grievance coordinator." (Doc. 42.)

The instant motion for and order to compel discovery was filed by Plaintiff on October 28, 2013. (Doc. 41.) On December 2, 2013, Plaintiff filed the instant motion to appoint counsel. (Doc. 44.) On January 17, 2014, Plaintiff filed a Motion for contempt proceedings against defendants based on the above-described failure. (Doc. 48.) Plaintiff filed a supplemental motion for contempt on January 31, 2014. (Doc. 52.) The time for responses has passed and some responses have been filed to the motions. (Docs. 46, 50, 55.) The instant motions have been specifically referred to the undersigned magistrate judge. (Docs. 42, 45, 51.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), the motions are ready for report and recommendation without oral argument.

### B. Analysis and Conclusions

#### 1. Motion for an Order to Compel Discovery (Doc. 41)

Under Rule 26(b) of the Federal Rules of Civil Procedure, "the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, Rule 26(b) does require a "threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence. Otherwise, the [party] would be allowed to engage in the proverbial fishing expedition, in the hope that there *might* be something of relevance" in the information sought. *Tompkins v. Detroit Metro. Airport,* 278 F.R.D. 387, 388 (E.D. Mich. 2012) (emphasis in original). Therefore, "[d]istrict courts

3

have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

In the instant motion, Plaintiff contends that he sent to defendants a request for production of documents and that defendants have failed to answer the request because "they believe that they have no obligation to answer plaintiff discovery request because of their pending motion for summary judgment." (Doc. 41 at 1.) One of the requests was for the information the court ordered defendants to provide, i.e., "a copy of the record requests for grievance forms as kept by the grievance coordinator at the Gus Harrison Correctional Facility between October 2012 and March 25, 2013." (Doc. 43 at 1-2.) Therefore, Plaintiff has been supplied with this evidence. (Doc. 50.)

Since the summary judgment motion is pending and since Judge Friedman has narrowed the factual issue to the information requested and provided above (*see* Doc. 42), I suggest that the remaining requests from Plaintiff do not meet the threshold relevance requirement. I therefore recommend that this motion be denied.

**2. Motion to Appoint Counsel (Doc. 44)**

"There is no constitutional or . . . statutory right to counsel in federal civil cases." *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993). In addition, no federal law "authorize[s] the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. *Mallard v. United States Dist. Court*, 490 U.S. 296, 310, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989). "The appointment of counsel to civil litigants is a decision left to the sound discretion of the district court, and this will be overturned only when the denial of counsel results in '"fundamental unfairness impinging on due process rights."'" *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992) (citation omitted). Factors to be considered in determining whether to grant or deny the motion

4

include the merits of the case, the complexity of the case, the *pro se* litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't.*, 763 F.2d 757, 760 (6th Cir. 1985); *Ford v. Astrue*, No. 04-2977-Ma/P, 2008 WL 320293, *1 (W.D. Tenn. Feb. 4, 2008). The "test is *not* whether 'a good lawyer may have done better than [the plaintiff] [b]ecause if that were the test, 'district judges would be required to request counsel for every indigent litigant.'" *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006) (emphasis in original; citations omitted).

Here, the case is not inherently complex, there is no indication whether the *pro se* litigant made any prior efforts to retain counsel, and Plaintiff possesses the ability to present his claims and has demonstrably used the tools of litigation in this case to file numerous motions. I therefore find that the relevant factors weigh in favor of denying Plaintiff's motion to appoint counsel.

### 3.    Motions for Contempt Proceedings (Docs. 48, 52)

Except in cases where a magistrate judge has been given consent jurisdiction under 18 U.S.C. § 636(c) or misdemeanor jurisdiction under 18 U.S.C. § 3401, a magistrate judge may not enter an order of civil contempt. Instead, the magistrate judge's duties are delineated as follows:

> [T]he magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B). A report and recommendation certifying the facts is an acceptable manner in which to satisfy the above duty. *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045 (6th Cir. 1996).

### a. **Certification of Facts**

**i.** On November 15, 2013, Judge Friedman referred the case to the undersigned magistrate judge "for a determination regarding whether plaintiff actually requested a grievance form from the prison's Step I grievance coordinator." (Doc. 42.)

**ii.** On November 26, 2013, an order for further proceedings was filed which noted that Plaintiff had indicated in his response that "prison policies requires [sic] the grievance coordinator to maintain a record of requests received for grievance forms, and if the plaintiff was able to take discovery, plaintiff would be able to produce such documents" that would show he had requested the grievance forms. (Doc. 32 at 6.)

**iii.** The Court noted that it "agrees with Plaintiff that the most probative evidence of whether Plaintiff requested the grievance forms would be the record of requests for grievance forms as kept by the grievance coordinator." (Doc. 43.) Therefore, the Court ordered the defendants "to file with the court on or before January 7, 2014, a copy of the record requests for grievance forms as kept by the grievance coordinator at the Gus Harrison Correctional Facility between October 2012 and March 25, 2013." (Doc. 43 at 1-2.)

**iv.** On January 7, 2014, the MDOC Defendants filed a response to the court's order and attached a grievance summary report and copies of grievances, but did not file the record of requests for grievances as kept by the grievance coordinator and ordered by the Court. (Doc. 46.)

**v.** On January 17, 2014, Plaintiff filed a response to the notice, pointing out the defendants' failure to produce the proper documents. (Doc. 47.) On the same date, Plaintiff also filed a motion for contempt proceedings against the defendants based on the above-described failure. (Doc. 48.)

6

  **vi.** On January 22, 2014, the MDOC Defendants filed a response to Plaintiff's motion for contempt proceedings. (Doc. 50.) In their response, counsel for defendants indicated that they "sent documents that they thought were fully responsive to the Court and did not realize their inadvertent error until it received Plaintiff's motion for contempt" and that they "immediately attempted to remedy their error" and "have now attached the requested documents to this response." (Doc. 50 at 3.) Defendants and their counsel stated that they "extend their apologies to the Court and to Plaintiff." (*Id*.)

  **b.** **Discussion**

> "The movant in a civil contempt proceeding bears the burden of proving by clear and convincing evidence that the respondent 'violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" . . . "This Court requires that the prior order be 'clear and unambiguous' to support a finding of contempt." . . . We must resolve ambiguities "in favor of the party charged with contempt."

*M & C Corp. v. Erwin Behr GmbH & Co.,* 289 F. App'x 927, 935-36 (6th Cir. 2008) (citations omitted). Once the movant establishes the above criteria, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003). To satisfy this burden, the contemnor "must show categorically and in detail why he or she is unable to comply with the court's order." *Id.* The court should "also consider whether the [contemnor] 'took all reasonable steps within [his or her] power to comply with the court's order . . . .'" *Id.* (citation omitted).

  Defendants have acknowledged that they did not provide the information requested by the court's order until after the deadline passed and after Plaintiff filed the motion for contempt. (Doc. 50 at 3.) Defendants assert that the violation was not intentional, but rather inadvertent, and

7

support that assertion with the fact that they immediately corrected the failure and apologized.

Since the defendants immediately took "reasonable steps" to comply and have in fact complied with the Court's order, I recommend that the defendants should not be found in contempt and therefore further recommend that Plaintiff's motion for contempt proceedings be denied.

### 4.     Conclusion Regarding Motions

For the reasons stated above, I suggest that all of Plaintiff's motions be denied. (Docs. 41, 44, 48, 52.)

### 5.     Fact-finding Pursuant to the Order of Reference (Doc. 42)

As noted above, Plaintiff alleges that his civil rights were violated because the defendants "have been preventing plaintiff from sending out letters that complain[] about prison conditions at the facility, and preventing plaintiff from sending letters of a sexual nature to his female friends, which violates plaintiff['s] right to freedom of speech and expression." (Doc. 1 at 3.) With respect to the pending motion for summary judgment, the defendants presented evidence that Plaintiff failed to properly exhaust remedies because he did not file a Step III grievance. (Doc. 30.) Plaintiff conceded that he did not file a Step III grievance, but argued that "the prison's grievance process was not available to plaintiff because of his Modified Access (grievance restriction)." (Doc. 32 at 1, 4-6.) Plaintiff supplemented his response to the motion for summary judgment on January 31, 2014. (Doc. 53.)

Pursuant to the order of reference, the undersigned is to make "a determination regarding whether plaintiff actually requested a grievance form from the prison's Step I grievance coordinator." (Doc. 42.) The Court agrees with Plaintiff that "the most probative evidence of whether Plaintiff requested the grievance forms would be the record of requests for grievance forms as kept by the grievance coordinator." (Doc. 43.) Therefore, defendants were ordered "to

8

file with the court on or before January 7, 2014, a copy of the record requests for grievance forms as kept by the grievance coordinator at the Gus Harrison Correctional Facility between October 2012 and March 25, 2013." (Doc. 43 at 1-2.)

According to the documents provided by the defendants (Doc. 50), Plaintiff was placed on modified access status from August 17, 2012, to November 15, 2012. (*Id.* at Pg ID 246.) It should be noted that modified access status only requires that a prisoner obtain permission before filing a Step I grievance; it does not apply to the remaining steps in the sequence, including Step III, which is at issue in this case. However, since Plaintiff indicated that he was somehow prevented from filing a Step III form, the question raised is whether Plaintiff ever requested and was denied a Step III grievance form.

The submitted documents show that the following requests occurred. On October 12, 2012, Plaintiff requested a Step I grievance form so he could file a grievance against "ARUS Condon" for the "misconduct of falsifying a contraband document . . . regarding some contraband items, i.e., jacket, razors, and magazines home." (Doc. 50 at Pg ID 252.) On October 21, 2012, Plaintiff requested Step I grievance forms regarding the "librarian failure to make photocopies of my exhibits" and, in response to this request, it was written that "article pages do not qualify for legal photocopy loans, you can just cite them in your brief, as the courts have access to them . . . ." (*Id.* at Pg ID 247, 253, 258.) On November 2, 2012, Plaintiff also requested Step I grievance forms regarding "fear of prisoners attacking me in retaliation for me being a prosecution witness . . . ." (*Id.* at Pg ID 248.) On November 2, 2012, Plaintiff also sought Step I grievance forms for "C/O/ Marriott for continuously exposing my involvement in a criminal case as a prosecution witness." (*Id.* at Pg ID 254.) On November 6, 2012, Plaintiff filed a Step I grievance form which alleged, among other things, that "Social Worker Mr. Davis" gave Plaintiff "an unreasonable direct order

9

to stop sending complaints against him to the Warden . . . " and that "Mr. Davis is attempting to restrict my First Amendment right of freedom of expression . . . ."; on the form it was noted that Plaintiff "changed [his] grievance from what [he] had written! And what was approved!" (*Id.* at 249, 255.) Plaintiff also sought Step I grievance forms regarding his kosher diet. (*Id.* at Pg ID 257.)

There is no evidence that Plaintiff ever requested or was denied a Step III grievance form. I therefore conclude that Plaintiff did not request a Step III grievance form. I further suggest that Defendant's motion for summary judgment be granted as recommended in the Report and Recommendation (Doc. 38) based on Plaintiff's failure to properly exhaust administrative remedies.

|  |  |
|---|---|
| Dated: February 20, 2014 | s/ Charles E Binder<br>CHARLES E. BINDER<br>United States Magistrate Judge |

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and upon the following non-ECF participant via the United States Postal Service: Curtis Jackson # 282320, Ionia Maximum Correctional Facility, 1576 W. Bluewater Highway, Ionia, MI 48846.

Date: February 20, 2014                               By  s/Patricia T. Morris
                                                                          Law Clerk to Magistrate Judge Binder